IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ETHAN FRICKER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIREFLIES.AI CORP.,<br><br>Defendant. | **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Ethan Fricker ("Plaintiff") brings this class action against Fireflies.AI Corp. ("Defendant" or "Fireflies") for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.* Plaintiff's allegations regarding his own experiences are based on personal knowledge. Allegations regarding all other matters are based on information and belief, informed by counsel's reasonable investigation.

I. **INTRODUCTION**

1. This action arises from Fireflies' collection, possession, and retention of Plaintiff's and Class members' biometric data,[1] including voiceprints, without the notice, written consent, and statutory safeguards required by BIPA.

2. Fireflies is an artificial-intelligence meeting assistant that automatically joins virtual meetings conducted on platforms such as Zoom, Microsoft Teams, and Google Meet.

3. When Fireflies is enabled by a meeting host, it records, analyzes, transcribes, and stores the voiceprints of all meeting participants, including individuals who never created Fireflies

---

[1] The "Class" is defined below and, herein, the term "biometric data" refers collectively to biometric information and biometric identifiers, as defined within BIPA.

accounts, never agreed to Fireflies' Terms of Service, and never executed any written consent authorizing biometric data collection.

4. Fireflies' own website markets its product as providing "Speaker Recognition" that identifies different speakers in meetings and audio files. See Fireflies, https://fireflies.ai ("Speaker Recognition. Fireflies identifies different speakers in meetings and audio files.") (last visited Sept. 12, 2025). This function necessarily involves analyzing the unique vocal characteristics of participants and creating a template of those characteristics to identify, and distinguish between, the participants in a meeting.

5. Voiceprints are expressly defined as biometric identifiers under BIPA, 740 ILCS 14/10.

6. The voiceprints that Fireflies collects qualify as biometric data subject to BIPA's protections. And for good reason. Voiceprints are often used to authenticate individuals' identities when those individuals seek access to restricted personal or financial information. Thus, individuals whose voiceprints are stolen or compromised are at increased risk of identity theft and fraud. Accordingly, BIPA requires that private entities notify, and obtain informed consent from, individuals before collecting their voiceprints.

7. Fireflies collected and stored Plaintiff's and Class members' voiceprints without complying with BIPA §§ 15(a) or 15(b).

8. Defendant's BIPA violations were negligent, reckless, and intentional.

9. As a result, Plaintiff and members of the Class are entitled to statutory damages and injunctive relief. Defendant must compensate Plaintiff and members of the Class for its unauthorized collection of their sensitive data, and it must permanently delete that data to ensure Plaintiff and Class members are not subject to fraud or identity theft.

## II. PARTIES

### Ethan Fricker

10. Plaintiff Ethan Fricker is a citizen and resident of the State of Illinois who lives in Chicago, Illinois. He previously worked for Power Kiosk. During his employment there, between April 2025 and October 2025, he attended multiple virtual meetings (while being physically present in Chicago, Illinois) on Microsoft Teams that were recorded by his boss's Fireflies' account. His boss lived and worked in Illinois at the time. On information and belief, Mr. Fricker's boss had executed a subscription contract with Fireflies using an Illinois address to create the account, and Fireflies accepted repeat payments from that Illinois-based account.

11. During the above-mentioned meetings, Fireflies recorded Mr. Fricker's voice, analyzed his vocal characteristics to distinguish him as a unique speaker, and generated transcripts attributing statements to Mr. Fricker, thereby capturing his voiceprint. This collection of Mr. Fricker's voiceprint occurred in Illinois through a device in Illinois, and Fireflies' failure to obtain Mr. Fricker's consent to the collection of his biometric data, by necessity, also occurred in Illinois.

12. Mr. Fricker never created a Fireflies account, never agreed to Fireflies' Terms of Service, and never executed any written release authorizing Fireflies to collect or store his biometric data. Fireflies' Terms of Service apply only to individuals who affirmatively click "I Agree" to those Terms of Service, register for an account, or otherwise access the Services as users or account owners. See Fireflies Terms of Service § Intro, https://fireflies.ai/terms-of-service.pdf (last visited Sept. 12, 2025). Mr. Fricker did none of those things.

### Fireflies.AI Corp.

13. Defendant Fireflies.AI Corp. is a corporation organized under the laws of the State of Delaware with its principal place of business in California.

## III. JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because this is a class action in which the proposed Class exceeds 100 members, minimal diversity exists, and the amount in controversy exceeds $5,000,000.

15. This Court has personal jurisdiction over Defendant. For "cases involving Internet websites, the fact that [a] defendant's company takes orders and receives payment from Illinois residents directly through its Internet site indicates that jurisdiction is proper," so long as a plaintiff's injury arises out of those orders and sales. *TY, Inc. v. Sullivan*, No. 01-cv-1604, 2002 WL 500663, at *1 (N.D. Ill. Mar. 12, 2002). On information and belief: Defendant took orders from, and accepted payments from, individuals located in Illinois (whose accounts list Illinois addresses). Mr. Fricker was recorded by one of those individuals' Fireflies accounts, meaning his claims arise out of this forum-related contact.

16. And Defendant has other relevant contacts with Illinois that support jurisdiction in Illinois. Defendant purposefully availed itself of the privilege of conducting activities in Illinois by offering and operating an AI meeting-recording and transcription service that it knew, or reasonably should have known, would be used to record and analyze the voices of individuals physically present in Illinois. Defendant is used by over 500,000 businesses and organizations, as well as over 20,000,000 individuals. Many of these entities and individuals are located in Illinois, which Defendant knows because it markets its services nationwide without geographic restriction, including in Illinois, and because Defendant requires all subscribers to include billing addresses for their accounts, many of which include Illinois addresses.

17. Defendant also operates important business functions in Illinois. It has job positions based in Chicago, Illinois and Cave-In-Rock, Illinois. This is clear because Defendant previously

listed job openings for both a Product Marketing Manager and a Content Lead (SEO/GEO) in Illinois, which appear to have been subsequently filled.[2]

18. As a result, Defendant's contacts with Illinois are not random, fortuitous, or attenuated. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Rather, its contacts with Illinois "proximately result from actions" that Fireflies itself has directed toward Illinois, in marketing its services to Illinois individuals and organizations, contracting with Illinois subscribers, conducting its meeting transcription services and biometric data collection in Illinois meetings, and even placing key personnel in Illinois. *Id.*

19. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims—including the deployment and operation of Defendant's biometric data-collection software—occurred here.

20. To the extent Fireflies disputes personal jurisdiction, Plaintiff seeks limited jurisdictional discovery concerning Fireflies' Illinois-directed activities, including the collection of biometric data from Plaintiff and other individuals located in Illinois, the volume of meetings involving Illinois participants, Fireflies' Illinois-based customers, and Fireflies' data collection and storage architecture.

## IV. FACTUAL ALLEGATIONS

### A. Fireflies Collects and Possesses Voiceprints

21. Fireflies' Privacy Policy states that it collects and processes "meeting data" and "derivatives of such data," and that its Services provide voice functionality. Fireflies Privacy

---

[2] https://web.archive.org/web/20251229184808/https://www.jobtarget.com/jobs/jt-psq178kqvr/content-lead-seogeo-cave-in-rock-illinois; https://www.linkedin.com/jobs/view/product-marketing-manager-at-fireflies-ai-4324863137.

Policy §§ 2–3, available at https://fireflies.ai/privacy_policy.pdf (last visited Sept. 12, 2025).

22. Fireflies' Terms of Service further confirm that Fireflies records and stores meeting recordings when enabled, and retains such recordings within its systems. Fireflies Terms of Service § 4, available at https://fireflies.ai/terms-of-service.pdf (last visited Sept. 12, 2025). The Terms of Service state: "By using the Services, you are giving Fireflies consent to store recordings for any or all Fireflies meetings or webinars that you join, if such recordings are stored in Fireflies' systems." *Id.* To create transcripts and other derivatives of meeting data, Fireflies necessarily processes and associates audio data with individual speakers, resulting in the collection and retention of voice-derived identifiers that can be used to identify specific individuals. In other words: Fireflies collects and processes voiceprints ("Speaker Data"), which qualify as biometric identifiers under BIPA. Fireflies did so in the above-described meetings that Plaintiff attended, collecting Speaker Data from Plaintiff that can be used to identify Plaintiff (and was used to identify Plaintiff in the meetings).

23. Fireflies' data storage guidelines also show that the voiceprints that Fireflies collects and stores—which are derivatives of audio recordings—are associated with meeting participants' emails and names. The guidelines state as follows: "We collect and store user content and user metadata," including "User content" such as "Transcription[s], Summaries, Audio and video recordings, AskFred chats, Soundbites, and any derivatives of such," as well as "User metadata" including "Calendar metadata, *meeting participants' emails and names*, usage logs, and user settings/configuration." https://guide.fireflies.ai/articles/9596505232-learn-about-data-storage-and-transfer (last visited Feb. 26, 2026) (emphasis added). Accordingly, in the above-described meetings, Fireflies associated Plaintiff's Speaker Data with Plaintiff's email and name, and it has stored Plaintiff's Speaker Data along with his email and name.

24. Fireflies' Terms of Service state that when recording is enabled, Fireflies stores meeting recordings within its systems. Fireflies Terms of Service § 4, available at https://fireflies.ai/terms-of-service.pdf (last visited Sept. 12, 2025).

25. Fireflies' Privacy Policy further states that Personal Information is deleted only when Fireflies determines it is "no longer needed," or upon user request, and does not identify any fixed retention period or destruction deadline. Fireflies Privacy Policy § 13 (Data Retention), available at https://fireflies.ai/privacy_policy.pdf (last visited Sept. 12, 2025).

26. Fireflies does not publish any written policy establishing a retention schedule or guidelines for permanently destroying biometric identifiers within three years of an individual's last interaction, as required by 740 ILCS 14/15(a).

27. Through these practices, Fireflies collected and possessed Plaintiff's and Class members' voiceprints while they were physically present in Illinois.

**B. Fireflies Failed to Comply with BIPA**

28. Fireflies did not inform Plaintiff, in writing or otherwise, that it was collecting his biometric data during the above-described meetings in which he participated. Although Fireflies' software can inform meeting participants that it is present on a meeting, it does not inform participants that it is collecting voiceprints or biometric data.

29. Fireflies did not inform Plaintiff of the purpose or duration of biometric data collection. Nor does Fireflies inform any meeting participants of the purpose or duration of biometric data collection or storage (given that Fireflies does not even inform meeting participants that it is collecting biometric data in the first place).

30. Fireflies did not obtain Plaintiff's written consent to the collection of biometric data prior to collecting their voiceprints. As a matter of uniform policy: Fireflies' transcription service

never obtains the written consent to the collection of biometric data of any participants on the meetings on which it operates.

31. Prior to collecting Plaintiff's biometric data, Fireflies did not publish a publicly available written policy establishing a retention schedule and guidelines for permanently destroying biometric data as required by BIPA § 15(a). Indeed, as of the filing of this complaint, Fireflies has never published such a policy.

32. Defendant negligently, recklessly, and intentionally violated BIPA.

33. Illinois enacted BIPA in 2008. Since that time, numerous articles regarding the law's requirements have been published. And numerous lawsuits regarding the same have been filed. Due to these articles and lawsuits, Defendant knew or should have known that its data collection practices violated the law.

34. Fireflies' Privacy Policy contains a discussion of compliance with a range of domestic and international privacy laws, including California consumer privacy laws and the EU-U.S., UK, and Swiss Data Privacy Frameworks. See Fireflies Privacy Policy §§ 10–12, https://fireflies.ai/privacy_policy.pdf (last visited Sept. 12, 2025).

35. By contrast, neither Fireflies' Privacy Policy nor its Terms of Service mention the Illinois Biometric Information Privacy Act, biometric identifiers, voiceprints, or any Illinois-specific requirements governing biometric consent, retention, or disclosure. See Fireflies Privacy Policy; Fireflies Terms of Service, https://fireflies.ai/terms-of-service.pdf (last visited Sept. 12, 2025).

36. This disparity supports the inference that Fireflies was aware of and actively addressed privacy compliance obligations, yet failed to implement or disclose compliance with BIPA's well-established biometric safeguards.

## V. CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action on behalf of himself and all individuals whose Speaker Data was collected by Fireflies, while the individuals were in the State of Illinois, during the five years preceding the filing of this suit through the present (the "Class"). Excluded from this class definition are individuals who agreed to Fireflies' Terms of Service before having their Speaker Data collected.

38. The Class meets the certification prerequisites of Federal Rule of Civil Procedure 23(a). Its members are too numerous for practicable joinder, given that Fireflies has collected the Speaker Data of thousands of Illinois citizens during the applicable limitations period.

39. There are also questions of law and fact common to the above-defined Class, such as whether Defendant published a compliant BIPA policy before collecting Class members' data; whether the data Defendant collects constitutes biometric data under BIPA; and whether Defendant's BIPA violations were negligent, reckless, and/or intentional. Plaintiff's claims are typical of the Class's claims because they arise from the same course of conduct, and policies, of Defendant, and both Plaintiff's claims and the Class's claims depend on the same legal theories.

40. Further, Plaintiff and his counsel are adequate representatives of the Class. Plaintiff has suffered the same injury as members of the Class; Plaintiff has no conflicts of interest with members of the Class; and Plaintiff's counsel is highly experienced in class action litigation, including BIPA class action litigation.

41. The Class also meets the certification requirements of Federal Rule of Civil Procedure 23(b)(3). Questions of law and fact common to Class members predominate over any questions affecting only individual members, given that this case hinges on whether Defendant's uniform practices and policies violate BIPA.

42. A class action is superior to other available methods for adjudicating this controversy. It will promote fairness, justice, and efficiency, as well as reduce litigation costs and duplicative litigation stemming from the collection of thousands of Illinois citizens' biometric data by Defendant.

## VI. CAUSES OF ACTION

Plaintiff seeks the following relief based on the following causes of action.

**First Cause of Action**
**Violation of Section 15(a) of BIPA**
**(Brought by the Plaintiff on Behalf of the Class)**

43. Plaintiff incorporates by reference and reallege here all foregoing paragraphs of this Complaint.

44. Defendant is a "private entity" as defined by BIPA. 740 ILCS 14/10.

45. Plaintiff's and the Class's Speaker Data qualify as "biometric identifier[s]" or "biometric information" as defined by BIPA. *Id.*

46. Defendant violated BIPA by collecting and possessing Plaintiff's and the Class's Speaker Data without first publishing a "written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS § 14/15(a).

47. As a result, Plaintiff and members of the Class each seek and are entitled to (1) liquidated damages of $1,000 for each of Defendant's negligent violations; (2) liquidated damages of $5,000 for each of Defendant's reckless or intentional violations; (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; (4) injunctive relief; and (5) any other relief that the Court deems appropriate. *Id.* § 14/20.

**Second Cause of Action**
**Violation of Section 15(b) of BIPA**
**(Brought by the Plaintiff on Behalf of the Class)**

48. Plaintiff incorporates by reference and reallege here all foregoing paragraphs of this Complaint.

49. Defendant is a "private entity" as defined by BIPA. 740 ILCS 14/10.

50. Plaintiff's and the Class's Speaker Data qualify as "biometric identifier[s]" or "biometric information" as defined by BIPA. *Id.*

51. Defendant violated BIPA by collecting and possessing Plaintiff's and the Class's Speaker Data without first: informing them in writing that a biometric identifier or biometric information was being collected or stored; informing them in writing of the specific purpose and length of term for which a biometric identifier or biometric information was being collected, stored, and used; or obtaining a written release from them regarding the collection and storage of their biometric data. *Id.* § 14/15(b).

52. As a result, Plaintiff and members of the Class each seek and are entitled to (1) liquidated damages of $1,000 for each of Defendant's negligent violations; (2) liquidated damages of $5,000 for each of Defendant's reckless or intentional violations; (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; (4) injunctive relief; and (5) any other relief that the Court deems appropriate. *Id.* § 14/20.

**PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL**

WHEREFORE, Plaintiff, individually and on behalf of all similarly situated persons, demands a jury trial for all claims so triable and respectfully requests that the Court grant the following relief:

A. Certification of this case as a class action pursuant to Federal Rule of Civil Procedure 23;

  B. Designation of Plaintiff as representative of the Class and designation of counsel of record as counsel for the Class;

  C. A declaratory judgment that the practices complained of herein are unlawful;

  D. An award of statutory damages, injunctive relief, and other relief provided for under the foregoing causes of action as set forth above;

  E. An award of attorneys' fees and costs incurred in this action, including expert fees;

  F. Pre-judgment and post-judgment interest, as provided by law;

  G. A reasonable service award for Plaintiff; and

  H. All other legal and equitable relief that this Court deems necessary, just, and proper.

Dated: March 10, 2026           Respectfully submitted,

                         */s/ Douglas M. Werman*

                         Douglas M. Werman
                         John J. Frawley
                         **WERMAN SALAS P.C.**
                         dwerman@flsalaw.com
                         jfrawley@flsalaw.com
                         77 W. Washington St., Ste 1402
                         Chicago, IL 60602
                         Phone No.: (312) 419-1008