**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ETHAN FRICKER and LORENZO MARTINEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIREFLIES.AI CORP.,<br><br>Defendant. | No. 1:26-cv-02675<br><br>**JURY TRIAL DEMANDED** |

## CONSOLIDATED CLASS ACTION COMPLAINT

Ethan Fricker and Lorenzo Martinez ("Plaintiffs") bring this class action against Fireflies.AI Corp. ("Defendant" or "Fireflies") for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.* Plaintiffs' allegations regarding their own experiences are based on personal knowledge. Allegations regarding all other matters are based on information and belief, informed by counsel's reasonable investigation.

### I.  INTRODUCTION

1.  This action arises from Fireflies' collection, possession, and retention of Plaintiffs' and Class members' biometric data,[1] including voiceprints, without the notice, written consent, and statutory safeguards required by BIPA.

2.  Fireflies is an artificial-intelligence meeting assistant that automatically joins virtual meetings conducted on platforms such as Zoom, Microsoft Teams, and Google Meet.

3.  When Fireflies is enabled by a meeting host, it records, analyzes, transcribes, and stores the voiceprints of all meeting participants, including individuals who never created Fireflies

---

[1] The "Class" is defined below and, herein, the term "biometric data" refers collectively to biometric information and biometric identifiers, as defined within BIPA.

**CLASS ACTION COMPLAINT**

accounts, never agreed to Fireflies' Terms of Service, and never executed any written consent authorizing biometric data collection.

4.      Fireflies' own website markets its product as providing "Speaker Recognition" that identifies different speakers in meetings and audio files.[2] This function necessarily involves analyzing the unique vocal characteristics of participants and creating a template of those characteristics to identify, and distinguish between, the participants in a meeting.

5.      Voiceprints are expressly defined as biometric identifiers under BIPA, 740 ILCS 14/10.

6.      The voiceprints that Fireflies collects qualify as biometric data subject to BIPA's protections. And for good reason. Voiceprints are often used to authenticate individuals' identities when those individuals seek access to restricted personal or financial information. Thus, individuals whose voiceprints are stolen or compromised are at increased risk of identity theft and fraud. Accordingly, BIPA §§ 15(a) and 15(b) require that private entities notify, and obtain informed consent from, individuals before collecting their voiceprints. Yet Fireflies collected and stored Plaintiffs' and Class members' voiceprints without complying with BIPA §§ 15(a) or 15(b).

7.      Moreover, Defendant's BIPA violations were negligent, reckless, or intentional. BIPA is a well-known statute, and Fireflies previously researched domestic and foreign privacy laws, meaning it knew or should have known about BIPA's stringent requirements. Yet it did not comply with those requirements.

---

[2] See Fireflies, https://fireflies.ai ("Speaker Recognition. Fireflies identifies different speakers in meetings and audio files.") (last visited June 11, 2025).

**CLASS ACTION COMPLAINT**

8.      As a result, Plaintiffs and members of the Class are entitled to statutory damages and injunctive relief. Defendant must compensate Plaintiffs and members of the Class for its unauthorized collection of their sensitive data, and it must permanently delete that data to ensure Plaintiffs and Class members are not subject to fraud or identity theft.

## II.    PARTIES

### Plaintiff Ethan Fricker

9.      Plaintiff Ethan Fricker is a citizen of the State of Illinois, who resides in Chicago, Illinois. Plaintiff Fricker previously worked for Power Kiosk. During his employment, between April 2025 and October 2025, he attended multiple virtual meetings (while being physically present in Chicago, Illinois) on Microsoft Teams that were recorded by his boss's Fireflies' account.  His boss lived and worked in Illinois at the time. On information and belief, Mr. Fricker's boss had executed a subscription contract with Fireflies using an Illinois address to create the account, and Fireflies accepted reoccurring payments from that Illinois-based account.

10.     During the above-mentioned meetings, Fireflies recorded Plaintiff Fricker's voice, analyzed his vocal characteristics to distinguish him as a unique speaker, and generated transcripts attributing statements to Plaintiff Fricker, thereby capturing his voiceprint. This collection of Plaintiff Fricker's voiceprint occurred in Illinois through a device in Illinois, and Fireflies' failure to obtain Plaintiff Fricker's consent to the collection of his biometric data, by necessity, also occurred in Illinois.

11.     Plaintiff Fricker never created a Fireflies account, never agreed to Fireflies' Terms of Service, and never executed any written release authorizing Fireflies to collect or store his biometric data. Furthermore, Fireflies' Terms of Service apply only to individuals who affirmatively click "I Agree" to those Terms of Service, register for an account, or otherwise access

**CLASS ACTION COMPLAINT**

the Services as users or account owners.[3] Plaintiff Fricker did none of those things.

**Plaintiff Lorenzo Martinez**

12.    Plaintiff Lorenzo Martinez is a citizen and resident of Chicago, Illinois, and has resided in Illinois at all times relevant to this Complaint. Plaintiff Martinez works for Summit HQ and has attended several virtual meetings where Fireflies was being used.

13.    During the aforementioned periods of time, Fireflies recorded Plaintiff Martinez's voice, analyzed his vocal characteristics to distinguish him as a unique speaker, and generated transcripts attributing statements to Plaintiff Martinez, thereby capturing his voiceprint. This collection of Plaintiff Martinez's voiceprint occurred in Illinois through a device in Illinois, and Fireflies' failure to obtain Plaintiff Martinez's consent to the collection and retention of his biometric data, by necessity, also occurred in Illinois.

14.    Plaintiff Martinez did not create a Fireflies account, did not agree to Fireflies' Terms of Service, and did not execute any written release authorizing Fireflies to collect, store, or utilize his biometric data. Furthermore, Fireflies' Terms of Service apply only to individuals who affirmatively click "I Agree" to those Terms of Service, register for an account, or otherwise access the Services as users or account owners.[4] Plaintiff Martinez did not undertake any of these actions, nor is he an account owner.

**Defendant Fireflies.AI Corp.**

15.    Defendant Fireflies.AI Corp. is a corporation organized under the laws of the State of Delaware.  Its principal place of business until approximately March 2026 was California, and its principal place of business now is in Florida.

---

[3] *Terms of Service*, Fireflies.ai, https://fireflies.ai/terms-of-service.pdf (last visited June 15, 2026).

[4] *Id.*

**CLASS ACTION COMPLAINT**

### III.     JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the proposed Class exceeds 100 members, minimal diversity exists, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

17.     This Court has personal jurisdiction over Defendant. For "cases involving Internet websites, the fact that [a] defendant's company takes orders and receives payment from Illinois residents directly through its Internet site indicates that jurisdiction is proper," so long as a plaintiff's injury arises out of those orders and sales. *TY, Inc. v. Sullivan*, No. 01-cv-1604, 2002 WL 500663, at *1 (N.D. Ill. Mar. 12, 2002). On information and belief: Defendant took orders from, and accepted payments from, individuals located in Illinois (whose accounts list Illinois addresses). Both Plaintiff Fricker and Plaintiff Martinez were recorded by such individuals' Fireflies accounts, meaning their claims arise out of this forum-related contact.

18.     And Defendant has other relevant contacts with Illinois that support jurisdiction in Illinois. Defendant purposefully availed itself of the privilege of conducting activities in Illinois by offering and operating an AI meeting-recording and transcription service that it knew, or reasonably should have known, would be used to record and analyze the voices of individuals physically present in Illinois. Defendant's services are used by over 500,000 businesses and organizations, as well as over 20,000,000 individuals. Many of these entities and individuals are located in Illinois, which Defendant knows because it markets its services nationwide without geographic restriction, including in Illinois, and because Defendant requires all subscribers to include billing addresses for their accounts, many of which include Illinois addresses.

**CLASS ACTION COMPLAINT**

19.     Defendant also operates important business functions in Illinois. Defendant has posted job positions based in Chicago, Illinois and Cave-In-Rock, Illinois as recently as March 2026. Defendant previously listed job openings for both a Product Marketing Manager[5] and a Content Lead (SEO/GEO) in Illinois, which appear to have been subsequently filled.[6]

20.     As a result, Defendant's contacts with Illinois are not random, fortuitous, or attenuated.[7] Rather, its contacts with Illinois "proximately result from actions" that Fireflies itself has directed toward Illinois, in marketing its services to Illinois individuals and organizations, contracting with Illinois subscribers, conducting its meeting transcription services and biometric data collection in Illinois meetings, and even placing key personnel in Illinois.[8]

21.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims—including the deployment and operation of Defendant's biometric data-collection software—occurred here.

22.     To the extent Fireflies disputes personal jurisdiction, Plaintiffs seek limited jurisdictional discovery concerning Fireflies' Illinois-directed activities, including the collection of biometric data from Plaintiffs and other individuals located in Illinois, the volume of meetings involving Illinois participants, Fireflies' Illinois-based customers, and Fireflies' data collection and storage architecture.

---

[5] *See* https://www.linkedin.com/jobs/view/product-marketing-manager-at-fireflies-ai-4324863137 (last visited Mar. 23, 2026).

[6] *See* https://web.archive.org/web/20251229184808/https://www.jobtarget.com/jobs/jt-psq178kqvr/content-lead-seogeo-cave-in-rock-illinois (last visited June 15, 2026).

[7] *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

[8] *Id.*

**CLASS ACTION COMPLAINT**

## IV.    FACTUAL ALLEGATIONS

### A.    Illinois' Strong Stance on Protection of Biometric Data

23.    BIPA provides valuable privacy rights, protections, and benefits to citizens of Illinois.

24.    In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. The bankruptcy was alarming to the Illinois legislature because there was suddenly a serious risk that millions of fingerprint records – which, similar to other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware the scanners were not transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

25.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

26.    Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

**CLASS ACTION COMPLAINT**

27.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: (a) Informs the subject in writing that a biometric identifier or biometric information is being collected or stored; (b) Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (c) Receives a written release executed by the subject of the biometric identifier or biometric information."[9]

28.     Biometric identifiers include "retina or iris scan, fingerprint, **voiceprint**, or scan of hand or face geometry."[10] Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual.[11]

29.     BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information.[12] For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure.[13]

30.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric

---

[9] *See* 740 ILCS 14/15(b).

[10] *See* 740 ILCS 14/10 (emphasis added).

[11] *Id.*

[12] *See, e.g.,* 740 ILCS 14/15(c)-(d).

[13] *See* 740 ILCS 14/15(d)(1).

**CLASS ACTION COMPLAINT**

information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

31.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

32.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

33.     Plaintiffs and Class members, like the Illinois legislature, recognize how imperative it is to keep biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

### B.      Fireflies Collects and Possesses Voiceprints

34.     Fireflies' Privacy Policy stated during the class period that Fireflies collects and processes "meeting data" and "derivatives of such data," and that its Services provide voice functionality. [14]

---

[14] Fireflies Privacy Policy §§ 2–3, available at https://web.archive.org/web/20250520184242/https://fireflies.ai/privacy_policy.pdf (last visited June 15, 2026).

**CLASS ACTION COMPLAINT**

35. Fireflies' Terms of Service further confirm that Fireflies records and stores meeting recordings when enabled, and retains such recordings within its systems.[15] The Terms of Service stated, during the class period, the following: "By using the Services, you are giving Fireflies consent to store recordings for any or all Fireflies meetings or webinars that you join, if such recordings are stored in Fireflies' systems."[16]

36. To create transcripts and other derivatives of meeting data, Fireflies necessarily processes and associates audio data with individual speakers, resulting in the collection and retention of voice-derived identifiers that can be used to identify specific individuals. In other words: Fireflies collects and processes voiceprints ("Speaker Data"), which qualify as biometric identifiers under BIPA. Fireflies collected and processed Plaintiffs' voiceprints during the above-described meetings that Plaintiffs attended, which can now be used to identify Plaintiffs (and were used to identify Plaintiffs) in the meetings.

37. Fireflies' data storage guidelines also show that the voiceprints that Fireflies collects and stores—which are derivatives of audio recordings—are associated with meeting participants' emails and names. The guidelines state as follows: "We collect and store user content and user metadata," including "User content" such as "Transcription[s], Summaries, Audio and video recordings, AskFred chats, Soundbites, and any derivatives of such," as well as "User metadata" including "Calendar metadata, *meeting participants' emails and names*, usage logs, and user settings/configuration." Accordingly, in the above-described meetings, Fireflies

---

[15] *Terms of Service*, Fireflies.ai, https://fireflies.ai/terms-of-service.pdf (last visited June 15, 2026).

[16] *Id.*

**CLASS ACTION COMPLAINT**

associated Plaintiffs' Speaker Data with their emails and names, and stored that data together.[17]

38.     Fireflies' Terms of Service stated during the class period that when recording is enabled, Fireflies stores meeting recordings within its systems.[18]

39.     Fireflies' Privacy Policy further states that they "store personal information associated with your account for as long as your account remains active."[19]

40.     Through these practices, Fireflies collected and possessed Plaintiffs' and Class members' voiceprints while they were physically present in Illinois.

### C.     Fireflies Failed to Comply with BIPA

41.     Fireflies did not inform Plaintiffs, in writing or otherwise, that it was collecting their biometric data during the above-described meetings in which Plaintiffs participated. Although Fireflies' software can inform meeting participants that it is present on a meeting, it does not inform participants that it is collecting voiceprints or biometric data.

42.     Fireflies did not inform Plaintiffs of the purpose or duration of biometric data collection. Nor does Fireflies inform any meeting participants of the purpose or duration of biometric data collection or storage (given that Fireflies does not even inform meeting participants that it is collecting biometric data in the first place).

43.     Fireflies did not obtain Plaintiffs' written consent to the collection of biometric data prior to collecting their voiceprints. As a matter of uniform policy: Fireflies' transcription service

---

[17] *Learn About Data Storage and Transfer*, Fireflies.ai Help Center (Jan. 20, 2026), https://guide.fireflies.ai/articles/9596505232-learn-about-data-storage-and-transfer (last visited Mar. 23, 2026).

[18] *Terms of Service*, fireflies.ai, https://web.archive.org/web/20250520184242/https://fireflies.ai/terms-of-service.pdf (last visited June 15, 2026).

[19] *Fireflies.ai Privacy Policy § Data Retention*, Fireflies.ai Corp., https://fireflies.ai/privacy-policy#data-retention (last visited Mar. 23, 2026).

**CLASS ACTION COMPLAINT**

never obtains the written consent to the collection of biometric data of any participants on the meetings on which it operates.

44.     Prior to collecting Plaintiffs' biometric data, Fireflies did not publish a publicly available written policy establishing a retention schedule and guidelines for permanently destroying biometric data as required by BIPA § 15(a). Indeed, Fireflies has never published such a policy.

45.     Defendant negligently, recklessly, or intentionally violated BIPA.

46.     As discussed, Illinois enacted BIPA in 2008. Since that time, numerous articles regarding the law's requirements have been published. And numerous lawsuits regarding the same have been filed. Due to these articles and lawsuits, Defendant knew or should have known that its data collection practices violated the law.

47.     During the class period, Fireflies' Privacy Policy contained a discussion of compliance with a range of domestic and international privacy laws, including California consumer privacy laws and the EU-U.S., UK, and Swiss Data Privacy Frameworks.[20]

48.     By contrast, neither Fireflies' Privacy Policy nor its Terms of Service mentioned the Illinois Biometric Information Privacy Act, biometric identifiers, voiceprints, or any Illinois-specific requirements governing biometric consent, retention, or disclosure.[21]

49.     This disparity supports the inference that Fireflies was aware of and actively addressed privacy compliance obligations, yet failed to implement or disclose compliance with BIPA's well-established biometric safeguards.

---

[20] *Id.*

[21] *Id.*; *Terms of Service*, Fireflies.ai, https://fireflies.ai/terms-of-service.pdf (last visited June 15, 2026).

**CLASS ACTION COMPLAINT**

50.     Fireflies uses a number of different artificial intelligence models, including Large Language Models like GPT4.0, in processing user data, including voiceprints. Fireflies does not disclose, and therefore Plaintiffs are not certain, whether Fireflies supplies copies of Speaker Data to any of these artificial intelligence models. Nevertheless, based on information provided by the company and other outside articles, it appears that Fireflies may provide at least some Speaker Data, including potentially Plaintiffs' and/or the Class members' Speaker Data, to third parties in using those third parties' artificial intelligence models.[22] Those models may use Plaintiffs and/or the Class members' Speaker Data in training those models, which potentially exposes Plaintiffs and/or the Class members' Speaker Data for use by other third parties.

## V.     CLASS ACTION ALLEGATIONS

51.     Plaintiffs bring this action on behalf of themselves, and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

52.     The Class is defined as:

> All individuals whose Speaker Data was captured, collected, stored, or otherwise obtained by Fireflies while they were located in the State of Illinois and/or were residents of the State of Illinois during the five years preceding the filing of this action through the present (the "Class").

Excluded from the Class are individuals who agreed to Fireflies' Terms of Service before their Speaker Data was collected.

53.     *Numerosity:* The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, Defendant has collected, processed, and stored the Speaker Data of thousands of individuals in Illinois. The exact number of Class members is

---

[22] Fireflies.ai, Connect Fireflies with ChatGPT and unlock the full power of your meetings, YouTube, (Aug. 4, 2025) available at https://www.youtube.com/watch?v=OH3SnoAT5HU (last visited June 15, 2026).

unknown to Plaintiffs but is within Defendant's possession, custody, and control.

54. *Commonality:* There are also questions of law and fact common to the above defined Class, such as:

    a. whether Defendant published a compliant BIPA policy before collecting Class members' data;

    b. whether the data Defendant collects constitutes biometric data under BIPA;

    c. whether Defendant properly informed Plaintiffs and the Class that it collected, used, and stored their biometric identifiers;

    d. whether Defendant obtained an executed written release (as defined in 740 ILCS 14/10) from Plaintiffs and the Class to collect, capture, or otherwise obtain their biometric identifiers;

    e. whether Defendant obtained an executed written release (as defined in 740 ILCS 14/10) from Plaintiffs and the Class before capturing, collecting, converting, sharing, storing or using individuals' biometrics;

    f. whether Defendant provided a writing disclosing to Plaintiffs and the Class the specific purposes for which the biometrics are being collected, stored, and used;

    g. whether Defendant provided a writing disclosing to Plaintiffs and the Class the length of time for which the biometrics are being collected, stored, and used; and

    h. whether Defendant's BIPA violations were negligent, reckless, or intentional.

55. *Typicality:* Plaintiffs' claims are typical of the claims of the Class because they arise from the same course of conduct by Defendant and are based on the same legal theories. Plaintiffs, like all Class members, had their Speaker Data collected, stored, and used by Defendant

without the disclosures and written consent required by BIPA.

56.     *Adequacy:* Plaintiffs and their counsel will fairly and adequately represent the Class. Plaintiffs have suffered the same injuries as the members of the Class and have no conflicts of interest with other Class members. Plaintiffs have retained counsel who are experienced in class action litigation, including BIPA class actions, and who will prosecute this action vigorously on behalf of the Class.

57.     Additionally, The Class also meets the certification requirements of Federal Rule of Civil Procedure 23(b)(3).

58.     *Predominance:* Questions of law and fact common to Class members predominate over any questions affecting only individual members, given that this case hinges on whether Defendant's uniform practices and policies violate BIPA.

59.     *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual piecemeal litigation would be impracticable and inefficient given the number of Class members and the relatively small value of individual claims. Proceeding as a class action will conserve judicial resources and ensure consistent adjudication of common issues. It will promote fairness, justice, and efficiency, as well as reduce litigation costs and duplicative litigation stemming from the collection of thousands of Illinois citizens' biometric data by Defendant.

## VI.     CAUSES OF ACTION

Plaintiffs seek the following relief based on the following causes of action.

**COUNT I**
**Violation of Section 15(a) of BIPA, 740 ILCS 14/15(a)**
**(On Behalf of Plaintiffs and the Class)**

60.     Plaintiffs incorporate by reference and reallege all allegations stated in the preceding paragraphs as if fully set forth herein.

**CLASS ACTION COMPLAINT**

61. Defendant is a "private entity" as defined by BIPA. 740 ILCS 14/10.

62. Plaintiffs' and the Class's Speaker Data qualify as "biometric identifier[s]" or "biometric information" as defined by BIPA.

63. Defendant violated BIPA by collecting and possessing Plaintiffs' and the Class's Speaker Data without first publishing a "written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS § 14/15(a).

64. As a result, Plaintiffs and members of the Class each seek and are entitled to (1) liquidated damages of $1,000 for each of Defendant's negligent violations; (2) liquidated damages of $5,000 for each of Defendant's reckless or intentional violations; (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; (4) injunctive relief; and (5) any other relief that the Court deems appropriate. *Id.* § 14/20.

## COUNT II
### Violation of Section 15(b) of BIPA, 740 ILCS 14/15(b)
### (On Behalf of Plaintiffs and the Class)

65. Plaintiffs incorporate by reference and reallege all allegations stated in the preceding paragraphs as if fully set forth herein.

66. Defendant is a "private entity" as defined by BIPA. 740 ILCS 14/10.

67. Plaintiffs' and the Class's Speaker Data qualify as "biometric identifier[s]" or "biometric information" as defined by BIPA.

68. Defendant violated BIPA by collecting and possessing Plaintiffs' and the Class's Speaker Data without first: informing them in writing that a biometric identifier or biometric information was being collected or stored; informing them in writing of the specific purpose and

length of term for which a biometric identifier or biometric information was being collected, stored, and used; or obtaining a written release from them regarding the collection and storage of their biometric data. *Id.* § 14/15(b).

69. As a result, Plaintiffs and members of the Class each seek and are entitled to (1) liquidated damages of $1,000 for each of Defendant's negligent violations; (2) liquidated damages of $5,000 for each of Defendant's reckless or intentional violations; (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; (4) injunctive relief; and (5) any other relief that the Court deems appropriate. *Id.* § 14/20.

### COUNT III
### Violation of Section 15(d) of BIPA, 740 ILCS 14/15(d)
### (On Behalf of Plaintiffs and the Class)

70. Plaintiffs incorporate by reference and reallege all allegations stated in the preceding paragraphs as if fully set forth herein.

71. BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

72. Defendant fails to comply with this BIPA mandate.

73. Defendant is a "private entity" as defined by BIPA. 740 ILCS 14/10.

74. Plaintiffs' and the Class members' Speaker Data qualify as "biometric identifier[s]" as defined by BIPA. *Id.*

75. Plaintiffs' and the Class members' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *Id.*

76. Plaintiffs and the Class members are individuals who have had their "biometric identifiers" collected by Defendant, as explained in detail above. *Id.*

**CLASS ACTION COMPLAINT**

77.   Plaintiffs' and the Class members' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *Id.*

78.   Defendant systematically disclosed, redisclosed, or otherwise disseminated Plaintiffs' and the Class members' biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

79.   By disclosing, redisclosing, or otherwise disseminating Plaintiffs' and the Class members' biometric identifiers and biometric information as described herein, Defendant violated Plaintiffs' and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

80.   On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

### PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL

WHEREFORE, Plaintiffs, individually and on behalf of all similarly situated persons, demand a jury trial for all claims so triable and respectfully requests that the Court grant the following relief:

  a.   Certification of this case as a class action pursuant to Federal Rule of Civil Procedure 23;

**CLASS ACTION COMPLAINT**

b.   Designation of Plaintiffs as representatives of the Class and designation of counsel of record as counsel for the Class;

c.   A declaratory judgment that the practices complained of herein are unlawful;

d.   An award of statutory damages, injunctive relief, and other relief provided for under the foregoing causes of action as set forth above;

e.   An award of attorneys' fees and costs incurred in this action, including expert fees;

f.   Pre-judgment and post-judgment interest, as provided by law;

g.   A reasonable service award for Plaintiffs; and

h.   All other legal and equitable relief that this Court deems necessary, just, and proper.

Dated: June 24, 2026

Respectfully submitted,

*/s/ Douglas M. Werman*

Douglas M. Werman
John J. Frawley
**WERMAN SALAS P.C.**
dwerman@flsalaw.com
jfrawley@flsalaw.com
77 W. Washington St., Ste 1402
Chicago, IL 60602
Phone No.: (312) 419-1008

Gary M. Klinger (ARDC # 6303726)
William J. Edelman (ARDC # 6332368)
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Tel: (866) 252-0878
gklinger@milberg.com
wedelman@milberg.com

Mason A. Barney
Tyler J. Bean*
Kennedy M. Brian*
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
tbean@sirillp.com

**CLASS ACTION COMPLAINT**

kbrian@sirillp.com

Bryan L. Bleichner*
Philip J. Krzeski*
**CHESTNUT CAMBRONNE PA**
100 Washington Ave S, UNIT 1700
Minneapolis, Minnesota 55401
Tel: (612) 339-7300
bbleichner@chestnutcambronne.com
pkrzeski@chestnutcambronne.com

*Attorneys for Plaintiffs and the Putative Class*

*\* pro hac vice forthcoming*

**CLASS ACTION COMPLAINT**