**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ETHAN FRICKER and LORENZO MARTINEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIREFLIES.AI CORP.,<br><br>Defendant. | No. 1:26-cv-02675<br><br>Hon. Steven C. Seeger |

# **FIREFLIES.AI CORP.'S MOTION TO DISMISS**

## INTRODUCTION

Plaintiffs Ethan Fricker and Lorenzo Martinez claim they were invited to join online virtual meetings—i.e., video conferences—organized and hosted by their co-workers. They also claim their co-workers chose to enable an AI-powered software service provided by defendant Fireflies.AI Corp. ("Fireflies") to record, transcribe, and summarize those meetings. According to plaintiffs, Fireflies' software captured their biometric data—specifically, "voiceprints" extracted from recordings of plaintiffs' voices—to perform those functions. Plaintiffs contend Fireflies thereby violated the Illinois Biometric Information Privacy Act ("BIPA"), which governs the possession and collection of certain kinds of biometric data.

By their own admission, plaintiffs' claims are based on little more than "information and belief." Consol. Class Action Compl. ("Compl.") at 1. And plaintiffs' claims suffer from even deeper flaws, as well. The Court should dismiss the Complaint for several reasons.

**First,** plaintiffs lack Article III standing to assert a claim under Section 15(a) of BIPA, so that claim should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Section 15(a) requires entities that collect biometric data covered by BIPA to publish a retention and deletion policy for such data. But as the Seventh Circuit has explained, the duty to publish a Section 15(a) policy is "owed to the public generally, not to particular persons whose biometric information the entity collects." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020). And because plaintiffs have not alleged that they themselves suffered a concrete and particularized injury as a result of Fireflies' alleged non-compliance, their Section 15(a) claim fails under controlling precedent.

**Second,** the Complaint should be dismissed in its entirety under Rule 12(b)(2) because this Court lacks personal jurisdiction over Fireflies for purposes of this case. Plaintiffs do not allege their claims arise from any Illinois-based conduct *by Fireflies*. Instead, plaintiffs allege

they interacted with Fireflies' technology because *plaintiffs* chose to join meetings hosted by their co-workers, and because *plaintiffs' co-workers* chose to use Fireflies' technology during those meetings. But the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

**Third,** even if plaintiffs could overcome those threshold hurdles, the Complaint should be dismissed under Rule 12(b)(6) for multiple reasons. For starters, all plaintiffs' claims are barred by the Illinois extraterritoriality doctrine and the U.S. Constitution's Dormant Commerce Clause because plaintiffs do not plausibly allege Fireflies' relevant conduct occurred primarily and substantially in Illinois. Indeed, the few facts plaintiffs do allege point to the opposite conclusion—that all Fireflies' relevant conduct occurred *outside* Illinois. The Court should also dismiss plaintiffs' claim under Section 15(d) because (as plaintiffs admit) their assertion that Fireflies disclosed their biometric data to third parties is based on nothing but speculation.

## BACKGROUND

### A. The Illinois Biometric Information Privacy Act

Plaintiffs' claims arise exclusively under BIPA, an Illinois state law. BIPA was enacted in 2008 in reaction to the growing use of biometric technology "in the business and security screening sectors," and to address the concerns of members of the public who were "weary of the use of biometrics when such information is tied to finances and other personal information." 740 ILCS 14/5(a), (d). Recognizing that "[t]he use of biometrics … appear[ed] to promise streamlined financial transactions and security screenings," the Illinois General Assembly sought to allay the public's concerns by regulating private companies' use of such data. *Id*.

BIPA specifically regulates "biometric identifier[s]" and "biometric information." A biometric identifier is a "retina or iris scan, fingerprint, *voiceprint*, or scan of hand or face geometry." 740 ILCS 14/10 (emphasis added).[1] "Biometric information" means any information "based on" a biometric identifier. *Id*. For brevity, Fireflies refers to "biometric identifiers" and "biometric information" collectively as "biometric data."[2]

BIPA does not prohibit the collection or use of biometric data. Rather, it imposes obligations on entities if they engage in certain activities with respect to biometric data. As relevant here:

- Under Section 15(a) of BIPA, companies "in possession" of biometric data must develop and comply with "a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying" biometric data within defined timeframes. 740 ILCS 14/15(a).
- Under Section 15(b), companies that "collect … or otherwise obtain" biometric data must provide notice and obtain consent before doing so. 740 ILCS 14/15(b).
- And under Section 15(d), companies that "disclose, redisclose, or otherwise disseminate" biometric data to other parties must obtain consent before doing so (unless exceptions apply). 740 ILCS 14/15(d).

BIPA's penalties are harsh. "Any person aggrieved" by a violation of the law may sue for actual damages or, alternatively, liquidated damages of $1,000 per violation (for negligent violations) or $5,000 per violation (for "intentional[] or reckless[]" violations). 740 ILCS

[1] Unlike voiceprints, mere voice *recordings* are not biometric identifiers regulated by BIPA. *See, e.g.*, *McGoveran v. Amazon Web Servs., Inc.*, No. 1:20-CV-01399-SB, 2023 WL 2683553, at *10 (D. Del. Mar. 29, 2023) ("[U]nder [BIPA's] terms, voice audio alone is neither a biometric identifier (a voiceprint) nor biometric information (information derived from a voiceprint."), *aff'd*, 175 F.4th 434 (3d Cir. 2026); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1096 (N.D. Ill. 2017) ("The bottom line is that a 'biometric identifier' is not the underlying medium itself, or a way of taking measurements, but instead is a set of measurements of a specified physical component (eye, finger, voice, hand, face) used to identify a person."). Plaintiffs' Complaint obscures that critical definitional issue.

[2] By referring to "biometric data" here and elsewhere, Fireflies does not concede that it collected, possessed, stored, or used any data regarding plaintiffs that falls within the scope of BIPA.

14/20(1), (2). A prevailing party also may recover attorneys' fees and costs. *See* 740 ILCS 14/20(3). The potential for enormous recoveries has inspired a wave of thousands of BIPA class actions in recent years "that has crashed down and flooded courthouses across the state." *Rowe v. Papa John's Int'l, Inc.*, No. 23-CV-2082, 2024 WL 3925411, at *1 (N.D. Ill. Aug. 23, 2024).

**B. Fireflies and Fireflies' Services**

Fireflies is a leading provider of productivity software and tools. Its services include AI-powered software that Fireflies account holders can use to record, transcribe, and summarize virtual meetings conducted via online platforms like Zoom. (These types of software services, which are increasingly common, are often colloquially described as "AI notetakers" or "AI meeting assistants.") As plaintiffs acknowledge, Fireflies' software joins meetings and performs its functions only "[w]hen [it] is enabled by a meeting host"—i.e., a Fireflies account holder who chooses if, when, and how to use the software. Compl. ¶ 3; *see also id*. ¶¶ 9, 12.

Fireflies is a Delaware corporation with its principal place of business in Florida. *See id*. ¶ 15. The Complaint correctly alleges that Fireflies "markets its services nationwide without geographic restriction." *Id*. ¶ 18.

**C. Plaintiffs' Claims**

Plaintiffs allege they are not Fireflies account holders, but they participated in virtual meetings hosted by co-workers during which their co-workers—who allegedly are account holders—enabled Fireflies' "meeting assistant" software. Mr. Fricker vaguely alleges he participated in such meetings "between April 2025 and October 2025." *Id*. ¶ 9. Mr. Martinez offers no hint as to when he attended any such meetings. *See id*. ¶¶ 12, 13. Plaintiffs further claim that, during those alleged meetings, their co-workers used Fireflies' software to record and analyze their voices "and generate[] transcripts attributing statements" to them. *Id*. ¶¶ 10, 13.

Because Fireflies' software allegedly generated such transcripts, plaintiffs infer that Fireflies must have captured their "voiceprint[s]," which is a specific type of biometric identifier governed by BIPA. *Id*.

Based on their random and fortuitous interactions with Fireflies' technology, all of which were instigated by third parties, plaintiffs now claim that Fireflies violated BIPA in three ways. First, they allege Fireflies violated Section 15(a) of BIPA by possessing their biometric data without publishing a schedule for permanently destroying that data. *See id*. ¶ 63. Second, they allege Fireflies violated Section 15(b) by collecting their biometric data without providing adequate notice and obtaining their consent. *See id*. ¶ 68. Third, they allege Fireflies violated Section 15(d) by disclosing their biometric data to unidentified third parties without their consent. *See id*. ¶ 78. They seek damages, injunctive relief, and declaratory relief on behalf of themselves and allegedly similarly situated individuals who are not Fireflies account holders.

## ARGUMENT

### A. Plaintiffs' Section 15(a) Claim Should Be Dismissed Under Rule 12(b)(1)

Plaintiffs' Section 15(a) theory is simple. According to plaintiffs, Fireflies captured their biometric data but did not publish the retention-and-deletion policy required by Section 15(a). *See, e.g.*, *id*. ¶ 63 ("Defendant violated BIPA by collecting and possessing Plaintiffs' and the Class's Speaker Data without first publishing" a Section 15(a) policy). Thus, plaintiffs reason, they are entitled to relief under Section 15(a).

In fact, however, plaintiffs have pleaded themselves out of court. As the Seventh Circuit explained years ago, the "duty to disclose under section 15(a) is owed to the public generally, not to particular persons whose biometric information the entity collects." *Bryant*, 958 F.3d at 626. Accordingly, when a plaintiff alleges only that a defendant failed to publish a Section 15(a)

policy, he fails to allege any particularized injury giving rise to Article III standing. *See id*. That is precisely the case here. *See* Compl. ¶ 63. Plaintiffs' Section 15(a) claim should therefore be dismissed for lack of standing under Rule 12(b)(1). *See Bryant*, 958 F.3d at 626 (where, as here, plaintiff alleged a mere failure to publish a policy, plaintiff "did not suffer a concrete and particularized injury [and] therefore lack[ed] standing … to pursue [a Section 15(a)] claim").

To be sure, a plaintiff may be able to establish standing for pleading purposes by adequately alleging a defendant has not complied with substantive requirements of Section 15(a), including the requirement to delete biometric data "when the initial purpose for collecting or obtaining such [data] has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a). *See Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1150 (7th Cir. 2020).

But plaintiffs do not allege any such facts here. *See, e.g.*, *Woods v. FleetPride, Inc.*, No. 1:21-CV-01093, 2022 WL 900163, at *5 (N.D. Ill. Mar. 27, 2022) (refusing to construe Section 15(a) claim as alleging unlawful retention because the complaint alleged only a bare failure to publish a policy); *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 815 (N.D. Ill. 2022) (same). Nor could they. For one thing, plaintiffs cannot allege Fireflies retained their data for more than three years. As noted above, Mr. Fricker claims to have interacted with Fireflies' technology as recently as October 2025, while Mr. Martinez seems not to know when he interacted with Fireflies' technology. *See* Compl. ¶¶ 9, 12, 13. Additionally, plaintiffs have not alleged any facts suggesting Fireflies does not have a purpose for retaining any data it may have collected, including a duty to fulfill its contractual obligations to the Fireflies account holders who chose to use Fireflies' software during the meetings plaintiffs attended. Thus, no amount of repleading could save plaintiffs' Section 15(a) claim, and it should be dismissed with prejudice.

**B. All Plaintiffs' Claims Should Be Dismissed Under Rule 12(b)(2)**

**1. Plaintiffs cannot allege general or specific personal jurisdiction.**

There are two types of personal jurisdiction: "general or all-purpose jurisdiction" and "specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Here, Fireflies is not subject to general jurisdiction because it is not incorporated in Illinois and it is not "essentially at home" in this state. *Id.*; *see also, e.g.*, *McGoveran v. Amazon Web Servs., Inc.* ("*McGoveran I*"), 488 F. Supp. 3d 714, 719 (S.D. Ill. 2020) ("[T]he Supreme Court has identified only two places where a corporation is 'at home': the state of the corporation's principal place of business and the state of its incorporation."). Plaintiffs do not appear to allege otherwise.

Thus, for their case to proceed before this Court, plaintiffs must adequately allege facts sufficient to show specific jurisdiction. *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) ("The plaintiff bears the burden of establishing personal jurisdiction when the defendant challenges it."). That means they must demonstrate a strong "affiliation between the forum and the underlying controversy." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017). More specifically, they must plausibly allege facts showing that (1) Fireflies actively targeted the Illinois market and (2) their claims arise from Fireflies' targeting. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) ("the focus" of the inquiry is "not … on the users who signed up, but instead on the deliberate actions by the defendant to target or direct itself toward the forum state").

Plaintiffs cannot meet those requirements. Nothing in the Complaint suggests Fireflies deliberately targeted Illinois or the plaintiffs. In fact, plaintiffs do not allege a single significant connection between Fireflies and Illinois. That is unsurprising because, in reality, Fireflies has no jurisdictionally significant contacts with Illinois. For example, Fireflies is not registered to do

business in Illinois; does not have any offices in Illinois; does not own property in Illinois; does not operate computer servers or similar resources in Illinois; does not engage in specialized marketing or advertising efforts targeting Illinois; and does not employ personnel in Illinois. *See* Declaration of Gregory Novotny Docter ("Docter Decl.") ¶¶ 11-24.[3]

Accordingly, plaintiffs' personal jurisdiction theory boils down to this: plaintiffs are Illinois residents; their co-workers, who are also Illinois residents, used Fireflies' technology during meetings plaintiffs attended; and plaintiffs were located in Illinois during those meetings. *See* Compl. ¶¶ 9-14. That theory fails on its face. Even if it is true that plaintiffs interacted with Fireflies' technology while in Illinois, that is insufficient because "the plaintiff cannot be the only link between the defendant and the forum." *Advanced Tactical*, 751 F.3d at 802 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). Nor does it matter that plaintiffs' co-workers, who also allegedly reside in Illinois, chose to use Fireflies' service and may have entered into contracts with Fireflies. *See* Compl. ¶¶ 9, 17. The Supreme Court has "consistently rejected attempts to [establish personal jurisdiction] by demonstrating contacts between … third parties and the forum State." *Walden*, 571 U.S. at 284; *see also McGoveran I*, 488 F. Supp. at 721 (jurisdiction "cannot be established through a third party's contacts with the forum state").

Lastly, plaintiffs' claims that Fireflies failed to obtain their consent in Illinois and collected their data in Illinois do not move the needle. *See* Compl. ¶¶ 10, 13. Apart from being untrue, those are just different ways of saying plaintiffs interacted with Fireflies' technology while they were in Illinois. And again, the mere fact "[t]hat the technology was used in Illinois does not establish minimum contacts." *Salkauskaite v. Sephora USA, Inc.*, No. 18-CV-08507, 2020 WL 2796122, at *5 (N.D. Ill. May 30, 2020).

---

[3] To avoid any ambiguity, Fireflies submits the Docter Declaration exclusively in support of its motion to dismiss under Rule 12(b)(2).

* * *

In short, plaintiffs ask this Court to assert personal jurisdiction over Fireflies simply because two Illinois residents happened to stumble across Fireflies' technology when they chose to join meetings hosted by Fireflies users. *See, e.g.*, Compl. ¶ 18 (alleging Fireflies is subject to personal jurisdiction because it "offer[ed] and operat[ed] an AI meeting-recording and transcription service that it knew, or reasonably should have known, would be used to record and analyze the voices of individuals physically present in Illinois"). That is exactly the sort of "merely random, fortuitous, or attenuated" interaction between a foreign defendant and a forum that the Supreme Court has long rejected as a basis for personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Even more to the point, it is well established that an online provider like Fireflies does not subject itself to personal jurisdiction in a remote forum merely by making its services available there. *See Shebesh v. Geneanet, S.A.*, No. 23 CV 04195, 2024 WL 2019447, at *5 (N.D. Ill. May 3, 2024) ("[S]imply operating a website that is accessible by Illinois residents is insufficient to show that [the defendant] targeted the Illinois market."); *Gullen v. Facebook.com, Inc.*, No. 15 C 7681, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016) ("Because plaintiff does not allege that Facebook targets its alleged biometric collection activities at Illinois residents, the fact that its site is accessible to Illinois residents does not confer specific jurisdiction over Facebook."). For that reason, the Seventh Circuit has long emphasized that "[c]ourts should be careful in resolving questions about online personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because [it] owns or operates a website that is accessible in the forum state." *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011) (cleaned up).

Nevertheless, that is what plaintiffs ask this Court to do. The Court should decline that invitation to error, just as many other courts have done. *See, e.g.*, *Castelaz v. Estee Lauder Companies., Inc.*, No. 22 CV 5713, 2024 WL 136872 (N.D. Ill. Jan. 10, 2024) (no personal jurisdiction because the "alleged connection between [the defendant] and Illinois was initiated by Plaintiff's own interactions with [defendant's technology]"); *Redd v. Amazon Web Servs., Inc.*, 673 F. Supp. 3d 943, 947 (N.D. Ill. 2023) (no personal jurisdiction where defendant merely provided its technology to a third party with which an Illinois resident chose to interact); *Gutierrez v. Wemagine.AI LLP*, No. 21 C 5702, 2022 WL 252704, *3 (N.D. Ill. Jan. 26, 2022) ("The only contact with the forum state here is Gutierrez (and other members of the putative class) downloading an app and using it. This attenuated contact is not sufficient for the Court to exercise personal jurisdiction[.]").[4]

**2. The Court should reject plaintiffs' request for jurisdictional discovery.**

Hoping to delay dismissal, plaintiffs ask the Court to allow ill-defined "jurisdictional discovery" before dismissing the Complaint for lack of personal jurisdiction. Compl. ¶ 22. The Court should reject that request for at least three reasons.

**First,** plaintiffs have not met their burden of explaining what discovery they would seek or (even more important) how it would support jurisdiction in this case. The Court should reject the request for that reason alone. *See Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 313 (S.D. Ind. 1997) (party seeking jurisdictional discovery must explain how "the documents sought might reasonably be expected to establish ... personal jurisdiction").

---

[4] It is also worth noting that plaintiffs have already filed a virtually identical lawsuit in federal district court in California, where Fireflies was headquartered during plaintiffs' alleged interactions with Fireflies' technology. *See Parrinello v. Fireflies.AI Corp.*, No. 4:26-cv-02479 (N.D. Cal. filed Mar. 23, 2026). By filing that duplicative "placeholder" lawsuit—presumably, in anticipation of Fireflies' Rule 12(b)(2) motion here—plaintiffs have implicitly acknowledged that their claims should be heard elsewhere.

**Second,** jurisdictional discovery is appropriate only if the party seeking it first makes a "colorable or prima facie" showing of personal jurisdiction. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). As explained above, plaintiffs' Complaint comes nowhere near meeting that standard. "Because [plaintiffs have] failed to make a prima facie showing of personal jurisdiction, [they are] not entitled to the limited jurisdictional discovery [they] request[]." *Redd*, 673 F. Supp. 3d at 947.

**Third,** the Docter Declaration makes clear that Fireflies has no jurisdictionally significant contacts with Illinois. Of course, plaintiffs may speculate to the contrary. But speculation alone is not enough to justify the burdens and delays of jurisdictional discovery. *See, e.g.*, *Powell v. Shiseido Americas Corp.*, No. 21-CV-2295, 2024 WL 6861872, at *11 (C.D. Ill. Oct. 15, 2024) (denying request for jurisdictional discovery and holding that "a district court does not abuse its discretion in denying additional discovery where the request was based on nothing more than mere speculation and would amount to a fishing expedition").[5]

### C. All Plaintiffs' Claims Should Be Dismissed Under Rule 12(b)(6)

Even if plaintiffs could cure the jurisdictional defects above, the Complaint still should be dismissed under Rule 12(b)(6) because (1) all plaintiffs' claims are barred by the Illinois extraterritoriality doctrine and the Dormant Commerce Clause of the U.S. Constitution, and (2) plaintiffs have not alleged the essential elements of their Section 15(d) claim.

#### 1. Plaintiffs do not allege that the relevant alleged conduct occurred primarily and substantially in Illinois.

BIPA does not apply extraterritorially. *See, e.g.*, *McGoveran v. Amazon Web Servs., Inc.* ("*McGoveran II*"), No. 20-1399-LPS, 2021 WL 4502089, at *3 (D. Del. Sept. 30, 2021) ("BIPA

[5] Additionally, the Court's recent minute order requires requests for jurisdictional discovery to be presented via motion. *See* Dkt. 29. The Complaint's demand for jurisdictional discovery is therefore procedurally insufficient.

violations must occur in Illinois in order for plaintiffs to obtain any relief."); *Rivera*, 238 F. Supp. 3d at 1100 ("[BIPA] is not authorized to have extraterritorial effect" and "[plaintiffs'] asserted violations of [BIPA] must have taken place in Illinois in order for them to win."); *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017) (same). As a result, an out-of-state defendant like Fireflies cannot be held liable under BIPA unless "the circumstances that relate to the disputed transaction occur[red] primarily and substantially in Illinois." *Monroy*, 2017 WL 4099846, at *6 (quoting *Avery v. State Farm Mut. Auto. Ins.*, 835 N.E.2d 801, 854 (Ill. 2005)).

*McGoveran II* is instructive. There, plaintiffs alleged BIPA violations based on Amazon Web Services' alleged collection of voiceprints from Illinois residents. Both AWS and the other defendant were Delaware corporations and did not affirmatively target Illinois. Accordingly, in earlier proceedings in Illinois, an Illinois district court dismissed plaintiffs' claims for lack of personal jurisdiction. *See McGoveran I*, 488 F. Supp. 3d at 721-24. Plaintiffs then refiled their complaint in Delaware district court. But the Delaware district court ultimately dismissed plaintiffs' claims on the ground that plaintiffs could not show that defendants' alleged conduct occurred in Illinois. *McGoveran II*, 2021 WL 4502089, at *4-6. Specifically, the Delaware court held that plaintiffs' allegations that defendants "extracted biometric information from calls originating from Illinois, from Illinois citizens, and from clearly recognizable Illinois phone numbers," and that defendants purportedly "'intercepted biometric information' from Illinois callers," were insufficient because "[a] plaintiff's residency is not enough to establish an Illinois connection in order to survive a motion to dismiss based on extraterritoriality." *Id.* at *4. "At bottom," the court explained, plaintiffs alleged only that the calls from which their biometric data

were extracted "originated from Illinois," not that defendants' conduct occurred there. *Id.* And that was not enough to meet the extraterritoriality doctrine's high bar.

The Court should reach a similar result here. Plaintiffs blithely assert that Fireflies collected their voiceprints "in Illinois through a device in Illinois." Compl. ¶ 10. But they fail to allege any facts supporting that conclusory statement. For example, plaintiffs do not allege that Fireflies' servers, data analysis, or decision-making processes are located in Illinois. Rather, plaintiffs' theory seems to be that Fireflies necessarily collected their voiceprints in Illinois because plaintiffs were located in Illinois when they interacted with Fireflies' technology. But that conclusion simply does not follow from the premise. *See McGoveran II*, 2021 WL 4502089, at *4 (stating, with respect to a similar allegation, that "[t]he Court does not see why that must be true"). And if the plaintiff's location was the dispositive factor in the analysis, then the extraterritoriality doctrine would be rendered meaningless for any internet-based service. *See id*. ("Plaintiffs' residency, standing alone, is not sufficient to establish that the alleged conduct occurred 'primarily and substantially' in Illinois."). That is why plaintiffs bear the burden of plausibly alleging that *Fireflies'* alleged misconduct occurred in Illinois. Because they have not done so, their claims should be dismissed. *See id.*; *see also Campana v. Nuance Commc'ns, Inc.*, No. 21 CV 1241, 2024 WL 2809838, at *3 (N.D. Ill. Mar. 8, 2024) ("[W]here the plaintiffs have failed to allege any facts, apart from their physical presence in Illinois when they interacted with the defendant's products, the complaint does not plausibly suggest that the events alleged occurred 'primarily and substantially' in Illinois.").

**2. Applying BIPA to Fireflies' global operations would violate the Dormant Commerce Clause.**

Further, interpreting BIPA to apply under the facts alleged by plaintiffs would raise serious constitutional concerns that the Court has a duty to avoid. *See Wilson v. Dep't of*

*Revenue*, 169 Ill. 2d 306, 310 (1996) (Courts "presume statutes to be constitutional and must construe enactments by the legislature so as to uphold their validity whenever it is reasonably possible to do so."). The Dormant Commerce Clause of the Constitution reserves for the federal government the regulation of interstate conduct and "protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 335-37 (1989). Where the "practical effect" of a regulation "is to control conduct beyond the boundaries of the State," the regulation is unconstitutional under the Dormant Commerce Clause. *Id*.

Interpreting BIPA to apply to conduct that did not occur primarily in Illinois, as plaintiffs ask this Court to do, would render BIPA unconstitutional under the Dormant Commerce Clause. And that legal conclusion is supported by important practical considerations: Under plaintiffs' reading of the law, Fireflies would be required to comply with BIPA's specific notice and consent regimes for every meeting, regardless of where the meeting host is located, simply because a single, unforeseen participant might be in Illinois. That, in turn, would effectively project Illinois' regulatory regime into other states, directly controlling commerce occurring wholly outside Illinois. *See Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 665 (7th Cir. 2010). The Dormant Commerce Clause prohibits that absurd and unworkable result.

**3. Plaintiffs' claim under Section 15(d) is wholly speculative.**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must include in the complaint "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir.

2008) (quoting *Lang v. TCF Nat'l Bank*, 249 F. App'x 464, 466 (7th Cir. 2007)). Plaintiffs do not come close to satisfying that burden with respect to their Section 15(d) claim.

Plaintiffs allege that Fireflies "systematically disclosed, redisclosed, or otherwise disseminated Plaintiffs' and the Class members' biometric identifiers and/or biometric information." Compl. ¶ 78. At the same time, plaintiffs admit there is no factual basis for that claim. *See id*. ¶ 50 ("Fireflies does not disclose, and therefore Plaintiffs are not certain, whether Fireflies supplies copies of Speaker Data to any of these artificial intelligence models."). And while plaintiffs try to plug that hole with a single paragraph containing multiple layers of supposition about what Fireflies and other companies "may" "potentially" do, *see id*., that is not enough to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (complaint must allege "more than a sheer possibility that a defendant has acted unlawfully"). Because plaintiffs have failed to allege anything more than a purely hypothetical violation of Section 15(d) that "may" "potentially" have occurred, their Section 15(d) claim fails.

## **CONCLUSION**

For the foregoing reasons, Fireflies respectfully requests that this Court grant Fireflies' motion to dismiss and dismiss the Complaint in its entirety and without leave to amend.

Dated: July 15, 2026

By: */s/ Ryan Spear*

Kathleen A. Stetsko
Kate.Stetsko@ashurstperkins.com
J. Mylan Traylor
Mylan.Traylor@ashurstperkins.com
ASHURST PERKINS COIE US LLP
110 N. Wacker Drive, Suite 3400
Chicago, IL 60606
Telephone: 312-324-8400

Ryan Spear
Ryan.Spear@ashurstperkins.com
Ryan Thomas Mrazik (*pro hac vice*)
Ryan.Mrazik@ashurstperkins.com
ASHURST PERKINS COIE US LLP
1301 Second Ave.
Seattle, WA 98101-3099
Telephone: 206-359-3787

*Attorneys for Defendant, Fireflies.AI Corp.*