**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ETHAN FRICKER and LORENZO MARTINEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIREFLIES.AI CORP.,<br><br>Defendant. | No. 1:26-cv-02675<br><br>Hon. Steven C. Seeger |

**FIREFLIES.AI CORP.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

## INTRODUCTION

Plaintiffs' Opposition confirms their Complaint is fatally flawed and must be dismissed. Hoping to avoid that result, plaintiffs try to rewrite their allegations after the fact and rely on readily distinguishable case law. But the Complaint remains deficient and must be dismissed for three independent reasons.

**First,** plaintiffs lack Article III standing to assert their claims under Section 15(a). The Complaint alleges a single, straightforward Section 15(a) theory: Fireflies collected plaintiffs' data "without first publishing" a sufficient retention policy. Compl. ¶ 63. That theory does not confer Article III standing. *See Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020). Implicitly conceding the point, plaintiffs now argue that they "also" allege their data was retained longer than it should have been retained. Crucially, however, that new theory appears nowhere in the Complaint, likely because plaintiffs could not make any such allegations consistent with Rule 11. And in any event, new allegations in a response brief cannot cure a deficient complaint.

**Second,** plaintiffs come nowhere near carrying their burden of alleging personal jurisdiction in this case. Plaintiffs' jurisdictional theory boils down to the idea that a few Illinois residents chose to use the Fireflies service, which is available in every jurisdiction in the country. As the Supreme Court has repeatedly held, that type of "random, fortuitous, or attenuated" contact, initiated by third parties and not by the defendant, does not support specific jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 286 (2014). Plaintiffs lean heavily on *Franchini v. Accu-Time Systems, Inc.*, but the claims in that case arose directly from defendant's concrete, affirmative acts targeting Illinois, including shipping hardware to Illinois that was used to collect biometric data; modifying its products and services "specifically for Illinois"; employing an Illinois salesperson; renting Illinois office space; and marketing to Illinois customers. Dkt. 32-1 at 4-6. Plaintiffs do not allege Fireflies actively targeted Illinois in any of those ways (or in *any* way, for that matter), so they cannot allege their claims arise from any such conduct by Fireflies. Fireflies is a cloud-based company with no hardware, servers, offices, employees, or property in Illinois,

and plaintiffs do not allege that Fireflies affirmatively "reached out" to them or their co-workers. So, this case involves the exact fact pattern that the Seventh Circuit has held insufficient to establish personal jurisdiction: plaintiffs and third parties unilaterally choosing to access a defendant's online service that is passively available to any person, in any state. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014). And plaintiffs have now abandoned their request for jurisdictional discovery, conceding "there is no need" for it. Opp'n at 12. The Complaint can and should be dismissed on that basis alone.

**Third,** even if plaintiffs could establish standing and jurisdiction, their claims fail under Rule 12(b)(6). For starters, BIPA does not apply extraterritorially, which means plaintiffs must plausibly allege that Fireflies' relevant conduct occurred "primarily and substantially" in Illinois. Plaintiffs say they have met that standard merely by alleging *they* were located in Illinois when *they* chose to participate in the allegedly transcribed meetings. But that is the very extraterritoriality theory that has been considered and rejected in multiple cases. Adopting plaintiffs' reading also would raise serious Dormant Commerce Clause concerns because Fireflies cannot know, in advance, where meeting attendees will be located; as a result, if plaintiffs' view is correct, then Fireflies (and all online service providers) would be required to seek BIPA-compliant consent from every user, *no matter where they reside*.

Lastly, the Opposition merely underscores that plaintiffs' Section 15(d) claim is based on nothing but speculation. Plaintiffs' hypotheses about how Fireflies' services "may" and might "potentially" work, which have no basis in any specific facts, fall far short of what is required under *Iqbal* and *Twombly*.

The Complaint should be dismissed in its entirety and without leave to amend.

## ARGUMENT

### I. Plaintiffs Lack Article III Standing to Pursue Their Section 15(a) Claim.

Plaintiffs concede that, to establish standing for their Section 15(a) claim, they must plausibly allege Fireflies *both* failed to publish a Section 15(a)-compliant retention policy *and*

failed to comply with Section 15(a)'s requirements. *See* Opp'n at 5; *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1154–55 (7th Cir. 2020). In *Fox*, that allegation was concrete and straightforward: the plaintiff alleged her biometric data was retained even after her employment ended, such that the purpose for the collection had necessarily been satisfied. 980 F.3d at 1149–50. Here, the Complaint alleges nothing of the sort.

Instead, plaintiffs merely allege that Fireflies violated Section 15(a) "by collecting and possessing plaintiffs' and the Class's Speaker Data without first publishing" the retention policy required by Section 15(a). Compl. ¶ 63 (emphasis added). That is the *only* theory of liability that is actually alleged in the Complaint, and it is the very theory foreclosed by *Bryant*. There, the Seventh Circuit held that, because the duty to publish a retention policy under Section 15(a) is "owed to the public generally, not to particular persons whose biometric information the entity collects," a plaintiff who alleges a mere failure to publish such a policy has "not suffer[ed] a concrete and particularized injury" required for Article III standing. *Id.* at 626. Accordingly, courts in this district regularly dismiss such claims for lack of standing. And they just as regularly refuse to indulge in creative interpretations of complaints to save deficient Section 15(a) claims, as the plaintiffs in this case ask the Court to do. *See, e.g.*, *Woods v. FleetPride, Inc.*, No. 1:21-cv-01093, 2022 WL 900163, at *5 (N.D. Ill. Mar. 27, 2022) (finding that the court lacked subject matter jurisdiction over nearly identical allegations because "the Section 15(a) claim hinges only on the failure to publish a retention and destruction policy"); *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 815 (N.D. Ill. 2022) (similar).

Plaintiffs try to argue around that defect by claiming that they "also" allege that Fireflies improperly retained their data beyond the initial purpose for its collection. Opp'n at 5–8. But plaintiffs cannot point to a single line in the Complaint simply saying as much, and their scattershot citations to the Complaint only emphasize the point. For example, plaintiffs lean heavily on the use of the word "retention" in the Complaint's introductory sentence. *Id.* at 6 (citing Compl. ¶ 1). But simply saying that Fireflies retains data, in general, is not the same as plausibly alleging that Fireflies retained plaintiffs' data past the point at which Fireflies was

permitted to do so. And even plaintiffs appear to acknowledge that they have alleged nothing more than the former. Opp'n at 6 ("Plaintiffs specifically claim that Fireflies 'collects and stores' meeting participants' 'voiceprints' and maintains them, in its systems, along with 'meeting participants' emails and names.'").

Plaintiffs also invoke allegations purporting to describe, by reference to Fireflies' "data storage guidelines," how the data Fireflies supposedly "collects and stores" can be used to identify individual speakers. Opp'n at 6 (citing Compl. ¶ 37). Importantly, however, nowhere do the cited guidelines say anything about retention of *voiceprints*, as opposed to other types of non-biometric data like meeting recordings and transcripts (which are irrelevant to plaintiffs' claims).[1] In fact, the Complaint provides no basis for inferring that Fireflies stores voiceprints at all. *See, e.g.*, Compl. ¶¶ 35 ("Fireflies records and stores meeting recordings when enabled"); 37 ("'We collect and store user content' … such as 'Transcription[s], Summaries, Audio and video recordings … and any derivatives of such[.]'"); 38 ("Fireflies' Terms of Service stated … that when recording is enabled, Fireflies stores meeting recordings within its systems."). To the contrary, the Complaint appears to disclaim such a theory by alleging that plaintiffs were identified "*during the meetings*," and not after the fact. *Id.* ¶ 36 ("Fireflies collected and processed Plaintiffs' voiceprints *during the above-described meetings*") (emphasis added).

In one last attempt to salvage their Section 15(a) claims, plaintiffs argue that because the initial purpose for the alleged collection was solely "to create transcripts of the virtual meetings they attended," it follows that any retention beyond the conclusion of each meeting they attended is necessarily unlawful. Opp'n at 2, 5–6. As an initial matter, that theory appears nowhere in their Complaint. Again, the Complaint alleges *only* that Fireflies "violated BIPA by collecting and possessing plaintiffs' and the Class's Speaker Data without first publishing" a Section 15(a)

[1] *See G.T. v. Samsung Elecs. Am. Inc.*, 742 F. Supp. 3d 788, 800 (N.D. Ill. 2024) ("BIPA only covers those … voiceprints, or scans of hand or face geometry that are capable of identifying an individual.") (cleaned up); *Martell v. X Corp.*, No. 23 C 5449, 2024 WL 3011353, at *4 (N.D. Ill. June 13, 2024) (noting that "courts have routinely held that a biometric identifier is 'a biology-based set of measurements[] that can be used to identify a person").

policy. Compl. ¶ 63. And it is "axiomatic[] that a plaintiff may not amend his complaint in his response brief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). But even if plaintiffs had pleaded that theory, it would not matter because—as discussed above—they do not plausibly allege that their *voiceprints* were retained after their meetings ended. Nor do they plausibly allege any facts from which this Court could infer that the *only* purpose for allegedly collecting plaintiffs' data was to create transcripts, or that Fireflies otherwise lacks a valid purpose for retaining plaintiffs' data.

Because the Complaint fails to allege that Fireflies retained data in violation of Section 15(a), and because new allegations in the Opposition cannot cure this deficiency, plaintiffs cannot establish Article III standing for their Section 15(a) claim.

## II. The Court Lacks Specific Personal Jurisdiction Over Fireflies.[2]

To establish specific personal jurisdiction, plaintiffs must show: (1) that Fireflies purposefully availed itself of the privilege of conducting business in Illinois by specifically targeting Illinois, and (2) that their claims arise from Fireflies' efforts to target Illinois. *Advanced Tactical*, 751 F.3d at 802–03. "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003); *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019) (similar). Here, plaintiffs' argument in support of specific personal jurisdiction is based on nothing more than the allegation that Fireflies is available in Illinois. They have therefore failed to meet their burden in all respects.

### A. *Franchini v. Accu-Time Systems, Inc.* is readily distinguishable.

Plaintiffs rely almost exclusively on *Franchini v. Accu-Time Systems, Inc.* to avoid dismissal for lack of personal jurisdiction. They claim *Franchini* stands for the proposition that a company that "receives money from Illinois, and data from Illinois" is necessarily subject to

[2] Plaintiffs' Opposition does not argue that this Court has general jurisdiction over Fireflies, and thus this argument is waived. *See* Opp'n at 9.

personal jurisdiction in Illinois. Opp'n at 8–11. Plaintiffs overread the reasoning and result of *Franchini*. And, in any event, it bears no resemblance to this case.

In *Franchini*, the plaintiffs sued Accu-Time, a biometric time-keeping hardware manufacturer and software provider. The Court found that it had personal jurisdiction over Accu-Time because it had engaged in conduct specifically and extensively targeted at Illinois and plaintiff's claims arose from that conduct. Specifically, Accu-Time shipped its fingerprint-scanning terminals into Illinois and then "coordinate[d]" with installers to "make sure that the Illinois-based installation [was] done correctly." Dkt. 32-1 at 3. Further, each time the customer's employees scanned their fingerprints to clock in or out of work, their biometric data was transmitted from Accu-Time's terminals (located in Illinois) to Accu-Time's servers. *Id*. Accu-Time also continuously "ping[ed] the biometric collection devices" about "every few minutes" to ensure operability, and was able to remotely modify the devices at will, including by specifically targeting devices located in Illinois to provide notice of compliance with BIPA. *Id.* at 4. Accu-Time collected payment per-device and for ongoing services, including an "express exchange service" in which it would "overnight a replacement device" to customers in Illinois. *Id.* And, while Accu-Time did not own property in Illinois, it employed an in-state salesperson, rented in-state office space, and marketed its products and services at in-state events. *Id.* at 4–5. On those facts—*none* of which are present here—the Court concluded that Accu-Time "knew that its products landed in the Illinois pond, and continued to extract fish from the pond in the form of dollars and data," and had "deliberately entered into contractual and business arrangements to ensure that its software collected data in Illinois." *Id.* at 10 (quoting *Crumpton v. Haemonetics Corp.*, 595 F. Supp. 3d 687, 697 (N.D. Ill. 2022)). Notably, the Court went out of its way to clarify that "[t]his is *not* a case where [the defendant] simply provided 'technology to its corporate customers outside of Illinois, with limited or no knowledge on how the technology eventually winds up in Illinois or is used by Illinois residents.'" *Id.* (collecting cases finding no jurisdiction on such facts).

Here, by contrast, Fireflies has not engaged in any of the conduct that gave rise to personal jurisdiction in *Franchini.* Fireflies offers its services nationwide and globally, and it does not specifically target Illinois with any of its products or services. Rather, as plaintiffs' Complaint makes clear, Fireflies' *only* contact with Illinois occurs "[w]hen [it] is enabled by a meeting host[.]" Compl. ¶ 3. In other words, it is an account holder who alone decides if, when, and how to use Fireflies, and whether to do so in Illinois. Accordingly, whether a given meeting happens to include a participant sitting in Illinois, Indiana, or India is solely a function of the host's invitations and the invitees' locations—not of anything Fireflies does. *McGoveran v. Amazon Web Servs., Inc.* ("*McGoveran I*"), 488 F. Supp. 3d 714, 721 (S.D. Ill. 2020) (holding that jurisdiction "cannot be established through a third party's contacts with the forum state"); *Walden*, 571 U.S. at 284–85 (similar).

In short, far from supporting a finding of personal jurisdiction here, *Franchini* makes clear that the mere fact that some Fireflies customers may be located in Illinois is not sufficient to confer personal jurisdiction over Fireflies.

### B. Unsolicited use of a nationally available service is not sufficient.

Without *Franchini*, plaintiffs' theory reduces to the idea that, because Fireflies "contracts with Illinois subscribers," accepts their payments, and receives data through their accounts, it is subject to personal jurisdiction in Illinois. Opp'n at 8–9. Even if accepted as true, those allegations describe nothing more than the *passive acceptance* of customers who signed up for a service offered nationwide—not deliberate targeting of Illinois—and that distinction is dispositive. The Seventh Circuit has instructed that the jurisdictional focus is not "on the users who signed up, but instead on the deliberate actions by the defendant to target or direct itself toward the forum state." *Advanced Tactical*, 751 F.3d at 803. For this reason, operating an interactive, nationally accessible service without more does not constitute such targeting. *See, e.g.*, *be2 LLC v. Ivanov*, 642 F.3d 555, 558–59 (7th Cir. 2011); *Gullen v. Facebook.com, Inc.*,

2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016); *Shebesh v. Geneanet, S.A.*, 2024 WL 2019447, at *5 (N.D. Ill. May 3, 2024).

Critically, plaintiffs' Complaint does not allege that Fireflies solicited, advertised to, or otherwise reached out to *anyone* in Illinois, let alone the account holders at issue. Docter Decl. ¶¶ 12–15. So, what remains are contacts created by the "unilateral activity of another party or a third person"—subscribers who found Fireflies on their own, and who then chose to deploy Fireflies' software during meetings that plaintiffs happened to attend. That is insufficient. A state's "exercise of jurisdiction over an out-of-state [defendant] must be based on intentional conduct *by the defendant* that creates the necessary contacts with the forum," *Gullen*, 2016 WL 245910, at *3, and not on "random, fortuitous, or attenuated contacts" it makes by interacting with other persons affiliated with the state. *be2 LLC,* 642 F.3d at 558 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)); *see also, e.g.*, *Bray v. Lathem Time Co.,* No. 19-3157, 2020 WL 1492742, at *3 (C.D. Ill. Mar. 27, 2020) (finding no personal jurisdiction where defendant "did not itself create any contact with Illinois" and "had nothing to do with how [biometric] devices got to Illinois"); *Castelaz v. Estee Lauder Companies, Inc.*, No. 22 CV 5713, 2024 WL 136872, at *5 (N.D. Ill. Jan. 10, 2024) (finding no personal jurisdiction where a virtual try-on product was "geographically neutral in the United States … and the same for any user who chooses to access and engage with it on [the] website, regardless of the state in which the user is located" because such contacts were based on "unilateral activity of a plaintiff or a third party"); *Redd v. Amazon Web Servs., Inc.*, 673 F. Supp. 3d 943, 947 (N.D. Ill. 2023) (finding no personal jurisdiction where the defendant provided technology to a third party that then used that technology in Illinois).[3]

Plaintiffs' remaining authorities fare no better. *TY, Inc. v. Sullivan*, No. 01 C 1604, 2002 WL 500663 (N.D. Ill. Mar. 12, 2002) is a two-decade-old district court decision issued years

[3] Plaintiffs' claim that Fireflies collects billing addresses does not change the analysis. Opp'n at 8. Virtually every online business collects billing addresses in order to process payments, and at most, this allegation shows that Fireflies could have foreseen that some subscribers reside in Illinois. That is not enough. *See Burger King*, 471 U.S. at 474–75.

before *Walden*, *Advanced Tactical*, and *be2*; to the extent it suggests that filling website orders from forum residents, without more, confers specific jurisdiction, it cannot be reconciled with that later, controlling authority. And in *Faur v. Sirius International Insurance Corp.*, 391 F. Supp. 2d 650, 654 (N.D. Ill. 2005), the defendant contracted with the *plaintiff himself*, and that forum contract was the very transaction in suit. Here, plaintiffs are strangers to any contracts between Fireflies and third parties (such as plaintiffs' employers and co-workers); so, even if Fireflies has contracts with those third parties, plaintiffs' claims do not arise from those contracts. That distinction makes all the difference because specific jurisdiction requires that the plaintiff's claims arise directly out of the defendant's forum-directed conduct. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017). It is not enough that a plaintiff can draw any sort of attenuated connection to his claims and a chain of choices made by others. *See, e.g.*, *Castelaz,* 2024 WL 136872, at *5; *Redd*, 673 F. Supp. 3d at 947.

Lastly, plaintiffs fault Fireflies for not separately briefing the third prong of the specific jurisdiction framework. Opp'n at 10–11. Plaintiffs misunderstand the law. That prong can defeat jurisdiction that otherwise exists, but it cannot create jurisdiction where, as here, plaintiffs fail to make the threshold minimum-contacts showing. *See Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 402 (7th Cir. 2020) (noting that a defendant's "compelling case" burden arises only when a plaintiff makes "a threshold showing of minimum contacts").

In any event, haling a Florida-based company into an Illinois courthouse to defend a putative class action based solely on where third parties chose to use its nationally available service would offend traditional notions of fair play. *Burger King*, 471 U.S. at 475–76. Nor is there any concern about access to relief: a materially identical action against Fireflies is already pending in the Northern District of California, where Fireflies was headquartered during the events alleged here. *See* Mot. at 10 n.4.

### C. Plaintiffs concede there is no need for jurisdictional discovery.

Plaintiffs have now abandoned the Complaint's request for jurisdictional discovery, telling the Court "there is no need" for it. Opp'n at 11–12; *cf.* Compl. ¶ 22. Fireflies agrees. The motion is ripe for decision on this record—and this record shows no jurisdictionally significant contacts with Illinois.

## III. The Complaint Independently Fails Under Rule 12(b)(6).

### A. Plaintiffs do not allege conduct occurring in Illinois.

BIPA does not apply extraterritorially, so a claim lies only if "the circumstances that relate to the disputed transaction occur[red] primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 854 (Ill. 2005); *see also, e.g.*, *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017) (the "asserted violations … must have taken place in Illinois"). This means that "the majority of circumstances relating to the alleged violation" must have occurred within the state. *Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 409 (Ill. App. 2008).

Plaintiffs identify four supposedly Illinois-centered "circumstances" giving rise to their claims: their residency; their physical presence during the transcribed meetings; the physical presence of their devices during the transcribed meetings; and Fireflies' alleged contracts with subscribers in Illinois. Opp'n at 12–13. The first three circumstances are the same fact stated three ways, but courts have consistently held that a plaintiff's location while interacting with a remote service does not, without more, establish that the *defendant's* conduct occurred in Illinois. *See, e.g.*, *McGoveran v. Amazon Web Servs., Inc.* ("*McGoveran II*"), No. 20-1399-LPS, 2021 WL 4502089, at *4 (D. Del. Sept. 30, 2021) ("Plaintiffs' residency, standing alone, is not sufficient to establish that the alleged conduct occurred 'primarily and substantially' in Illinois."), *aff'd*, 175 F.4th 434 (3d Cir. 2026); *Campana v. Nuance Commc'ns, Inc.*, 2024 WL 2809838, at *3 (N.D. Ill. Mar. 8, 2024) (dismissing claim on extraterritoriality grounds where plaintiffs "failed to allege any facts, apart from their physical presence in Illinois when they interacted with the defendant's products"); *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (dismissing claim even though "plaintiffs contend that Illinois has

‘significant contacts’ with each of the named class plaintiffs because each is a resident”); *Super Pawn Jewelry & Loan, LLC v. Am. Env’t Energy, Inc.*, 2013 WL 1337303, at *7 (N.D. Ill. Mar. 29, 2013) (dismissing claim given “weak connection to Illinois” despite plaintiff's residency). The fourth circumstance adds nothing: that Fireflies contracts with customers in Illinois says nothing about where *Fireflies*’ relevant conduct—that is, the alleged capture, analysis, and storage of supposed voiceprints—occurred. The Complaint alleges no Illinois servers, no Illinois data processing, and no Illinois operations of any kind.[4] Nor could it.

Sensing that weakness, plaintiffs again try to shift the focus by arguing that the “locus of the alleged BIPA violations” is in Illinois because that is where the alleged “failure to notify and obtain consent” occurred. Opp’n at 12–13. But that reasoning is plainly circular and, as multiple courts have recognized, wrong. Under that logic, a nationwide online service’s alleged violations would “primarily and substantially” occur *wherever any user happens to be located*, which would render the extraterritoriality doctrine a nullity in every case involving online services. *McGoveran II* considered and squarely rejected this exact theory, explaining:

> Plaintiffs allege that both Defendants failed to make written biometric data retention and destruction policies available to the public and that they failed to provide notice to and obtain consent from Illinois citizens. According to Plaintiffs, those failures “necessarily occurred in Illinois.” The Court does not see why that must be true. (*See* Tr. at 10) (“[I]t really makes no sense to assign a location for an act that did not occur.”) … According to Plaintiffs, “under BIPA, as long as the source of the biometric data is Illinois, that’s enough to establish liability.” That rule flies in the face of Illinois cases holding that a plaintiff’s residency is not enough to survive a motion to dismiss based on extraterritoriality. Furthermore, if that rule were correct, then BIPA could impose liability on a vast number of corporations who do no business in Illinois and who lack any other significant connection to Illinois. There is no basis in the statutory language to find that BIPA stretches so far.

---

[4] The Complaint’s allegations that Fireflies “posted job positions based in Chicago, Illinois, and Cave-In-Rock, Illinois” change nothing. *See* Compl. ¶ 19. Plaintiffs have not alleged and cannot allege that these positions were actually filled. And even if they could, plaintiffs fail to allege any facts linking those positions to the conduct alleged here.

*McGoveran II*, 2021 WL 4502089, at *4, *6 (internal citations omitted). Illinois courts have reached this same conclusion. *See, e.g.*, *Campana*, 2024 WL 2809838, at *3 ("[W]here the plaintiffs have failed to allege any facts, apart from their physical presence in Illinois when they interacted with the defendant's products, the complaint does not plausibly suggest that the events alleged occurred 'primarily and substantially' in Illinois."); *Walker v. S.W.I.F.T. SCRL*, 491 F. Supp. 2d 781, 795 (N.D. Ill. 2007) (dismissing claims as impermissibly extraterritorial where "the only connection to the state of Illinois is the fact that plaintiff … is a resident of Illinois").

*Monroy* does not hold otherwise and does not save plaintiffs' claim from dismissal. There, the court declined to resolve extraterritoriality at the pleadings stage because there was a legitimate question, based on the plaintiff's allegations, as to where the relevant conduct occurred; the court did not hold that a plaintiff's in-state presence suffices. *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *5–6 (N.D. Ill. Sept. 15, 2017) (noting that it was unclear "where the scan was stored once it was obtained"). Here, there is no ambiguity. The Complaint does not allege that *any* conduct on the part of Fireflies occurred in Illinois. Plaintiffs' fallback argument—that the issue is "premature" (Opp'n at 13–14)—thus fails for the same reason that it failed in cases like *Campana* and *McGoveran*, where the courts dismissed at the pleading stage. Where, as here, a complaint alleges nothing tying the defendant's conduct to Illinois beyond the plaintiff's residency, there is no factual dispute for discovery to develop. Plaintiffs cannot proceed to discovery in search of the allegations they were required to plead. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

### B. Plaintiffs' sweeping interpretation violates the Dormant Commerce Clause.

Plaintiffs' response to Fireflies' Dormant Commerce Clause argument attacks a strawman. Fireflies does not contend that BIPA is facially unconstitutional. Rather, it contends that if BIPA were interpreted as plaintiffs propose, then it would violate the Dormant Commerce Clause—a result this Court should avoid. Mot. at 13–14; *Wilson v. Dep't of Revenue*, 662 N.E.2d 415, 417 (Ill. 1996).

*National Pork Producers Council v. Ross*, 598 U.S. 356 (2023), does not help plaintiffs. At issue in *Ross* was whether the Dormant Commerce Clause precludes a state from regulating entirely *in-state* conduct, where such regulations only incidentally affect out-of-state conduct. And its rejection of a freestanding, "almost per se" rule against laws with extraterritorial effects did not disturb the principle—applied by the Seventh Circuit in *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 665–69 (7th Cir. 2010)—that a state may not directly regulate commercial conduct occurring wholly outside its borders. Plaintiffs' own description of BIPA underscores the problem: they say the statute "merely requires companies collecting biometric data of Illinois residents to provide notice and obtain consent[.]" Opp'n at 14. But a cloud-based meeting-notetaking service available in every state in the country cannot know *ex ante* whether a participant in any particular meeting is an Illinois resident. Thus, under plaintiffs' interpretation of BIPA, Fireflies—and every online provider—would have to comply with BIPA's requirements in every case, and at all times, no matter where consumers actually reside. That is precisely the projection of one state's regulatory regime into every other state that concerned the Court in *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 336–37 (1989), and it is, at minimum, a constitutional question that the Court should construe BIPA to avoid.

### C. Plaintiffs plead no facts making a Section 15(d) disclosure plausible.

Plaintiffs' Opposition confirms that their Section 15(d) claim rests on mere speculation. The Complaint's sole supporting allegation states that Fireflies "does not disclose, and therefore plaintiffs *are not certain*, whether Fireflies supplies copies of Speaker Data" to third-party artificial-intelligence models—only that "it appears that Fireflies *may* provide at least some Speaker Data, including *potentially* plaintiffs' and/or the Class members' Speaker Data," which those third parties in turn "*may* use" in training. Compl. ¶ 50 (emphases added). Plaintiffs call the resulting inference "straightforward," but their own argument makes clear that it requires a chain of tortured assumptions and rank speculation. Simply stated, the Complaint pleads no facts plausibly showing that *voiceprints*—as opposed to text transcripts, summaries, or other non-

biometric user content—are ever processed by any third-party model at all. Indeed, the only source the Complaint cites for the proposition is a promotional video about connecting meeting *transcripts* to ChatGPT. Compl. ¶ 50 n.22. A transcript is, of course, not a "voiceprint" under BIPA. *See Rivera*, 238 F. Supp. 3d at 1096.

Plaintiffs attempt to defend their Section 15(d) claim by claiming that "certain knowledge" is not required at the pleading stage. Opp'n at 15. But the problem with their claim is not that it lacks certainty. The problem is that it is based on nothing more than a speculative chain of unsupported inferences, and therefore lacks plausibility. *See, e.g.*, *Iqbal*, 556 U.S. at 678 (a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully"); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)) ("Threatened injury must be certainly impending to constitute injury in fact, and allegations of possible future injury are not sufficient.") (cleaned up); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) ("[a] plaintiff still must … show that it is plausible, rather than merely speculative, that he is entitled to relief."). Because plaintiffs plead a hypothesis, not a claim supported by well-pleaded facts, their Section 15(d) claim should be dismissed.

## CONCLUSION

For the foregoing reasons and those stated in its opening brief, Fireflies respectfully requests that the Court dismiss the Complaint in its entirety and without leave to amend.

Dated: August 26, 2026

By: <u>*/s/ Kathleen A. Stetsko*</u>
Kathleen A. Stetsko
Kate.Stetsko@ashurstperkins.com
J. Mylan Traylor
Mylan.Traylor@ashurstperkins.com
ASHURST PERKINS COIE US LLP
110 N. Wacker Drive, Suite 3400
Chicago, IL 60606
Telephone: 312-324-8400

Ryan Spear
Ryan.Spear@ashurstperkins.com
Ryan Thomas Mrazik (*pro hac vice*)
Ryan.Mrazik@ashurstperkins.com
ASHURST PERKINS COIE US LLP
1301 Second Ave.
Seattle, WA 98101-3099
Telephone: 206-359-3787

*Attorneys for Defendant, Fireflies.AI Corp.*